IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HEARTREPRENEUR, LLC *et al*.        :
                                    :   CIVIL ACTION
            v.                      :
                                    :   NO. 18-2417
JOCELYN JONES *et al*.              :

**SURRICK, J.**                                          **MAY 29, 2020**

## MEMORANDUM

Presently before the Court are two Motions to Dismiss filed by Defendants (ECF Nos. 23, 25).  For the following reasons, Defendants' Motions will be granted in part, and denied in part.

## I.  BACKGROUND

In this trademark infringement and unfair competition action, Plaintiffs Heartrepreneur and Comprehensive Coaching U ("CCU"), providers of business consulting and coaching services, bring claims against seven individuals who were at one time associated with Heartrepreneur but left to begin a competing business, "Smart ENCOREpreneur."  Plaintiffs assert claims for trademark infringement, false advertising, unfair competition, defamation, and breach of contract.  As will be explained below, the Amended Complaint fails to allege facts sufficient to establish the Court's personal jurisdiction over the six non-Pennsylvania resident Defendants.  Plaintiffs' claims against the remaining Pennsylvania-resident Defendant, Karen Saxe Eppley, may proceed, with the exception of Heartrepreneur's trademark infringement claim and CCU's breach of contract claim, which will be dismissed.

Heartrepreneur is run by Terri Levine.  (Am. Compl. ¶ 2, ECF No. 21.)[1]  It "provides business coaching and consulting, professional training courses, and training seminars for business owners" to businesses or proprietors of businesses.  (Am. Compl. ¶¶ 12, 13.)  Some of Heartrepreneur's clients are in Pennsylvania.  (*Id.*)  The stylized mark "Heartrepreneur" is a trademark of CCU, registered with the United States Patent and Trademark Office.  (*Id.* ¶ 65.)  CCU is described as a "related company" of Heartrepreneur and is wholly owned by Terri Levine.  (*Id.* ¶¶ 2, 65.)

Four Defendants were once independent contractors of Heartrepreneur: Jocelyn Jones, a New York resident; Karen Swanson, a Michigan resident; Karen Saxe Eppley, a Pennsylvania resident; and Cinnamon Alvarez, a California resident.  (*Id.* ¶ 3-5, 8, 19.)  These Defendants entered into Confidentiality and Non-Disclosure Agreements with Heartrepreneur.  (*Id.* at Ex. A-D.)  The agreements prevented Defendants from copying or disclosing to others Heartrepreneur's proprietary and confidential information, including its customer information and "business and personal growth methodologies."  (*Id.*)

The Amended Complaint identifies Defendants Robin Helm and Vicki Helm, both Colorado residents, as "prospective business partners" of Heartrepreneur.  (*Id.* ¶¶ 6, 9, 20.)  No other details are alleged with respect to those Defendants.  Finally, the Amended Complaint identifies Tracy Revell as a Colorado resident; however, does not indicate whether she is an independent contractor or a prospective business partner.  (*Id.* ¶¶ 7, 10, 13.)  No other details are alleged with respect to Revell.

---

[1] Terri Levine serves as the "proprietor and head" of Heartrepreneur; however, Mark Levine is listed as the sole member of the limited liability company.  (Am. Compl. ¶ 1, 2.)

In May 2018, Defendants "quit" Heartrepreneur and started a competing business called "Smart ENCOREpreneur," which is also referred to as "ENCOREpreneur," or "ENCORE-preneur." (*Id*. ¶ 14, Ex. E.) Plaintiffs allege that Defendants told Heartrepreneur's customers, whose names they had taken from Heartrepreneur's confidential customer lists, that Terri Levine was "physically too weak to help customers because of an illness," a statement that was not true. (*Id*. ¶ 14.) Defendants also copied Heartrepreneur's client outreach messages and unique business phrases for use in connection with ENCOREpreneur. (*Id*. ¶¶ 15, 30.) For example, both Heartrepreneur and ENCOREpreneur referred to business groups as "tribes" or "ecosystems," and referred to themselves as "Movements." (*Id.* ¶¶ 15, 31.)

Plaintiffs allege that Defendants caused clients to believe that Defendants still associate with Heartrepreneur and that the two companies are affiliated. Plaintiffs attach to their Amended Complaint three communications that establish customer confusion: one between an ENCOREpreneur representative and an unidentified client; and two between Terry Levine and Heartrepreneur clients, where the clients express confusion about the two companies' affiliation with each other. (*Id*. at Exs. E, F, G.) Plaintiffs allege that Defendants' actions have caused Plaintiffs to lose business, reputation, and goodwill.

Based on these factual allegations, Plaintiffs assert the following claims: (1) false advertising under the Lanham Act, 11 U.S.C. § 1125(a) against all Defendants (Count 1); unfair competition under state law against all Defendants (Count 2); breach of contract against Defendants Jones, Swanson, Saxe Eppley, and Alvarez (Count 3); defamation against all

Defendants (Count 4); and trademark infringement under the Lanham Act, 15 U.S.C. § 1114 (Count 5).[2]

## II.    LEGAL STARDARDS

### A.    Personal Jurisdiction Under Rule 12(b)(2)

A complaint may be dismissed pursuant to Rule 12(b)(2) when a court lacks personal jurisdiction over a defendant.  In order to "survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citing *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)).  However, "when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction…." *Id.* at 97 (citing *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)).  In deciding a motion under Rule 12(b)(2), a court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker*, 292 F.3d at 368 (citation omitted).

A district court has personal jurisdiction over a nonresident defendant to the extent allowed by the law of the state where the court sits, and subject to the constitutional limitations of due process.  Fed. R. Civ. P. 4(e).  Pennsylvania's long-arm statute allows a court to exercise jurisdiction over a nonresident defendant "to the fullest extent allowed under the Constitution of

---

[2] Plaintiff also asserts a claim for injunctive relief in Count 6.  However, "[t]he relief a plaintiff seeks, and the claims he asserts, are . . . conceptually distinct components of a complaint, and there is no need for a plaintiff to devote a separate count of a complaint to a request for a certain type of relief." *Kauffman v. Pennsylvania Soc. for the Prevention of Cruelty to Animals*, 766 F.Supp.2d 555, 560 (E.D. Pa. 2011).  Plaintiffs have also requested injunctive relief in the ad damnum clauses of each count in the Amended Complaint, and they have filed a Motion for Preliminary Injunction.  Requesting an injunction as an individual claim in this case is therefore unnecessary, such that the claim will be dismissed.

the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."  42 Pa. Cons. Stat. § 5322(b); *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020).

"Personal jurisdiction can be either general jurisdiction or specific jurisdiction."  *Id*. "General jurisdiction exists 'when the plaintiff's claim arises out of [the] defendant's 'continuous and systematic' contacts with the forum state.'"  *Malik v. Cabot oil & Gas Corp.*, 710 F. App'x 561, 563 (3d Cir. 2017) (quoting *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 223 (3d Cir. 2016)).  Specific jurisdiction, on the other hand, "is present 'when the cause of action arises from the defendant's forum-related activities.'"  *Id*. (quoting *Chavez*, 836 F.3d at 223).  The exercise of specific jurisdiction over a defendant "requires a finding that the defendant 'purposefully directed [its] activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'"  *Id*. at 564 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  "If those two requirements are met, then we are required to determine whether the exercise of jurisdiction otherwise comport[s] with 'fair play and substantial justice.'"  *Id*. at 564-65 (quoting *Rudzewicz*, 471 U.S. at 476).  Finally, "a court must analyze questions of personal jurisdiction on a defendant-specific and claim-specific basis." *Miller Yacht Sales*, 384 F.3d at 95 n.1.

### B.    Failure to State a Claim Under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  A motion under Rule 12(b)(6) tests the sufficiency of the complaint against the pleading requirements of Rule 8(a).  "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements. . . ." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679. This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

## III.    DISCUSSION

Defendants argue that the Court lacks personal jurisdiction over all of the out-of-state Defendants. Defendants also argue that Plaintiffs have not alleged facts sufficient to state claims for all Counts of the Amended Complaint. We first address whether we have jurisdiction over Defendants.

### A.    Personal Jurisdiction

Six of the seven Defendants are not residents of Pennsylvania. Defendants contend that Plaintiffs have not met their burden in establishing the Court's personal jurisdiction over these out-of-state Defendants. The parties agree that the Court lacks general personal jurisdiction over

these Defendants and focus their dispute on whether specific personal jurisdiction exists.  The parties agree that the Court has general personal jurisdiction over the Pennsylvania resident, Saxe Eppley.

Because Defendants have challenged the Court's personal jurisdiction, Plaintiffs bear the burden "to come forward with sufficient facts to establish that jurisdiction is proper." *Danziger & De Llano*, 948 F.3d at 129 (citation omitted).  Without having conducted an evidentiary hearing, as is the case here, Plaintiffs need only establish "a prima facie case of personal jurisdiction." *Miller Yacht Sales*, 384 F.3d at 97.  Nevertheless, Plaintiffs must allege "specific facts" and not vague or conclusory assertions.  *Marten v. Godwin*, 499 F.3d 290, 298 (3d Cir. 2007).  In other words, they "must "establish with reasonable particularity" the following three elements:  (1) that each Defendant purposefully directed his or her activities at Pennsylvania; (2) that Plaintiffs' claims arise out of or relate to one of those activities; and (3) that our jurisdiction does not "offend traditional notions of fair play and substantial justice." *Danziger & De Llano*, 948 F.3d at 129-30.

Plaintiffs have not met this burden.  They make one allegation concerning activities directed at Pennsylvania:  that "Defendants have used Heartrepreneur's own customer lists specifically and knowingly to target Heartrepreneur's customers, including customers in this District."  (Am. Compl. ¶ 32.)  They do not allege whether any Defendant in fact contacted Pennsylvania customers, and if so, whether services were sold.  In addition, Plaintiffs refer to all Defendants collectively and do not separately allege how each Defendant purposefully directed activities towards Pennsylvania.  Plaintiffs may not simply lump Defendants together to establish jurisdiction.  The United States Supreme Court has held that, in assessing personal jurisdiction, "[e]ach defendant's contacts with the forum State must be assessed individually." *Calder v.*

7

*Jones*, 465 U.S. 783, 790 (1984); *see also Rush v. Savchuk*, 444 U.S. 320, 332 (1980) ("The

requirements of *International Shoe* . . . must be met as to each defendant over whom a state court

exercises jurisdiction").  We know very little about Defendants individually.  Plaintiffs have

provided us only with their states of residences and the fact that four Defendants entered into

Confidentiality and Non-Disclosure Agreements with Heartrepreneur.  This is simply not

enough.

   Nor does the fact that Heartrepreneur entered into Confidentiality and Non-Disclosure

Agreements with Jones, Swanson, Saxe Eppley and Alvarez—without more—establish specific

personal jurisdiction over these Defendants.  "The mere existence of a contract . . . 'is

insufficient to establish minimum contacts.'"  *Mendelsohn, Drucker & Assocs. v. Titan Atlas

Mfg., Inc.*, 885 F. Supp. 2d 767, 773 (E.D. Pa. 2012) (quoting *Metcalfe v. Renaissance Marine,

Inc.*, 566 F.3d, 324, 333 n.7 (3d Cir. 2009)).  In considering jurisdiction in contracts cases, courts

should consider "whether the defendant's contacts with the forum were instrumental in either the

formation of the contract or its breach."  *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir.

2001).  The Amended Complaint is devoid of any facts concerning the formation of these

agreements.  *Cf. Mendelsohn*, 885 F. Supp. 2d at 780 (finding sufficient contacts for personal

jurisdiction where the parties "engaged in substantial communication throughout the contractual

relationship," including 531 emails, 38 phones calls and partial payment sent to the plaintiff's

Philadelphia office).  Finally, although the "Confidentiality and Non-Disclosure Agreements"

contain a "governing law" clause, requiring that any contractual disputes be interpreted under

Pennsylvania law, choice-of-law provisions are not, by themselves, "enough to vest jurisdiction."

*Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 65 (3d Cir. 1984).

Plaintiffs' bare allegations that the Defendants collectively targeted Heartrepreneur's customers in Pennsylvania—without identifying even one Pennsylvania customer—are the very vague and conclusory assertions that are insufficient to establish personal jurisdiction.  We must assess each Defendant's contacts with Pennsylvania separately in order to determine whether we may exercise jurisdiction over that Defendant.  *Calder*, 465 U.S. at 790; *Rush*, 444 U.S. at 332. Based on the lack of detail about Defendants in the Amended Complaint, we are unable to make a proper assessment.  *See Selby v. Schroeder*, No. 19-61, 2020 WL 774043, at *4 (M.D. Pa. Feb. 18, 2020) (finding no personal jurisdiction over defendant as plaintiff "failed to establish that the [defendant] directed any relevant activities at the forum state"); *Witasick v. Estes*, No. 11-3895, 2012 WL 3075988, at *6 (D.N.J. July 30, 2012) (concluding that plaintiffs did not make a *prima facie* case of specific jurisdiction where they only provided general statements that the defendants did business in New Jersey); *Pilot Air Freight Corp. v. Berkshire Hathaway, Inc*., No. 91-4680, 1992 WL 164745, at *2 (E.D. Pa. July 2, 1992) ("It is plaintiff's burden to establish as to each defendant contacts sufficient to justify the exercise of jurisdiction.").

Plaintiffs have not requested jurisdictional discovery.  Even if they had, jurisdictional discovery is not appropriate in this case.  "Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'"  *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (quoting *Mass. School of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)).  Jurisdictional discovery should be permitted "[i]f a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite contacts between [the party] and the forum state."  *Id.*  However, the court may in its discretion deny requests for discovery if discovery

would not be "worthwhile."  *Molnlycke Health Care AB v. Dumex Med. Surgical Prod. Ltd*., 64 F. Supp. 2d 448, 454 (E.D. Pa. 1999) (denying request for jurisdictional discovery where the plaintiff "has offered no suggestion that discovery to investigate specific jurisdiction . . . might be productive").

Plaintiffs have failed to make even a threshold showing that the Court has specific personal jurisdiction over the six non-Pennsylvania resident Defendants.  Plaintiffs simply allege that Defendants "used Heartrepreneur's own customer lists specifically and knowingly to target Heartrepreneur's customers, including customers in this District."  (Am. Compl. ¶ 32.)  This is the only fact connecting any of the non-resident Defendants to Pennsylvania.  The Third Circuit has held that "a mere unsupported allegation that the defendant 'transacts business' in an area is 'clearly frivolous'" for purposes of determining whether jurisdictional discovery is warranted. *Mass. Sch. of Law at Andover, Inc.*, 107 F.3d at 1042 (affirming district court's denial of jurisdictional discovery).  Plaintiffs' allegations are nothing more than a "mere unsupported allegation" that Defendants have possibly transacted business with Pennsylvania residents.  *Id*. This is not sufficient.

Moreover, this is not a case where corporate defendants are in sole possession of the information that could establish personal jurisdiction.  Jurisdictional discovery is more appropriate when determining the jurisdiction of "corporate defendants and the question of whether they are 'doing business in the state.'"  *Id*.  "Where the defendant is an individual, the presumption in favor of discovery is reduced."  *Id*.  Defendants are all individuals, not corporations.  There was no imbalance in the access to information alleged between Plaintiffs and Defendants.  Plaintiffs knew the identities of their Pennsylvania customers and could have easily ascertained whether any were directly solicited by Defendants.

Finally, Plaintiffs had an opportunity to amend their Complaint to address jurisdictional challenges.  Just prior to filing the Amended Complaint, Defendants filed a motion to dismiss, arguing that Plaintiffs failed to allege facts establishing specific jurisdiction over them.  (*See* ECF No. 8.)  Plaintiffs responded with an Amended Complaint that added just one allegation— that Defendants, collectively, targeted Heartrepreneur clients in this District.  This is insufficient. *See Arch v. American Tobacco Co., Inc*., 984 F. Supp. 830, 841 (E.D. Pa. 1997) ("A court may deny jurisdictional discovery where the plaintiff has failed to meet its burden of making out a threshold prima facie case of personal jurisdiction.").  Again, Plaintiffs have not even requested jurisdictional discovery.  But if they had, the request would have been denied.

Accordingly, the Amended Complaint will be dismissed against the six non-Pennsylvania resident Defendants over whom we lack jurisdiction:  Jocelyn Jones; Karen Swanson; Robin Helm; Cinnamon Alvarez; Vicki Helm, and Tracey Revell.  The remainder of this Memorandum will address Plaintiffs' substantive claims against Defendant Karen Saxe Eppley only.[3]

### C.      Trademark Infringement (Count 5)

Plaintiffs allege that the name of Defendants' competing business, "ENCOREpreneur" or "Smart ENCOREpreneur," is confusingly similar to Plaintiffs' mark, "Heartrepreneur," and therefore infringes Plaintiffs' trademark.

A complaint alleging trademark infringement under the Lanham Act must demonstrate that: "(1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3)

---

[3] Because we dismiss all non-Pennsylvania resident Defendants, we need not address Defendant Alvarez's argument about insufficient service of process.  We also need not address Defendants' motion to dismiss based on improper venue.  Saxe Eppley is a resident of York, Pennsylvania, and Plaintiffs are residents of North Wales, Pennsylvania.  Venue is proper in this District.

the defendant's use of the mark to identify goods or services is likely to create confusion concerning the origin of the goods or services." *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 (3d Cir. 1994).

Saxe Eppley argues first that Heartrepreneur's claim must be dismissed because it does not own the mark. Instead, the mark "Heartrepreneur" is a trademark of CCU registered with the USPTO. Heartrepreneur does not respond to this argument. We assume it therefore concedes to dismissal. Even if it did not, the claim would be still be dismissed. Registration of a trademark, as CCU has done, is "'*prima facie* evidence of . . . the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate.'" *B & B Hardware, Inc. v. Hargis Indus., Inc*., 575 U.S. 138, 142-43 (2015) (quoting 15 U.S.C. § 1057). For reasons that are not explained, Heartrepreneur does not own the Heartrepreneur mark. As a result, it cannot maintain a trademark infringement claim against Saxe Eppley. *See Prime Hookah, Inc. v. Disc. Smoking Prod., Inc*., No. 18-15600, 2019 WL 1650100, at *3 (D.N.J. Apr. 17, 2019) ("[I]f a plaintiff does not own the mark, the plaintiff cannot plausibly allege that it has suffered "an invasion of a legally protected interest").

Saxe Eppley also argues that Plaintiffs have failed to allege facts sufficient to show likelihood of confusion. To prove likelihood of confusion, a plaintiff must demonstrate that "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Scott Paper Co. v. Scott's Liquid Gold, Inc*., 589 F.2d 1225, 1229 (3d Cir. 1978). "Marks are confusingly similar if ordinary consumers would likely conclude that [the two products] share a common source, affiliation, connection or sponsorship." *A & H Sportswear, Inc. v. Victoria's*

12

*Secret Stores, Inc*., 237 F.3d 198, 216 (3d Cir. 2000) (citation omitted).  Here, Plaintiffs have

alleged and submitted exhibits showing *actual* customer confusion.  In response to a

communication by a Defendant, one customer inquired: "Is this the same as Heartrepreneur

circles?"  (Am. Compl. Ex. E.)  Another customer stated to Terri Levine about Smart

ENCOREpreneur: "I thought that you were somehow together but doing business together with

different branches!!!"  (*Id*. at Ex. G.)  Another customer stated to Levine: "I am so sad to hear of

these actions.  It was confusing for me at first as I thought their group was an extension of

Heartrepreneurs . . ."  (*Id*. at Ex. F.)  At this stage, CCU has stated a plausible claim of trademark

infringement against Saxe Eppley.

### D.    False Advertising and Unfair Competition (Counts 1 and 2)

Plaintiffs also allege a claim of false advertising under the Lanham Act.  Plaintiff's claim

falls under Section 1125(a)(1) of the Lanham Act, which provides:

> (1) Any person who, on or in connection with any goods or services, or any
> container for goods, uses in commerce any word, term, name, symbol, or device,
> or any combination thereof, or any false designation of origin, false or misleading
> description of fact, or false or misleading representation of fact, which—
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the
> > affiliation, connection, or association of such person with another
> > person, or as to the origin, sponsorship, or approval of his or her
> > goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature,
> > characteristics, qualities, or geographic origin of his or her or another
> > person's goods, services, or commercial activities,
> > shall be liable in a civil action by any person who believes that he or she is
> > or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

Claims falling under Subsection (A) are known as false designation of origin, unfair

competition, or false association claims, while claims falling under Subsection (B) are known as

false advertising claims.  *AFL Philadelphia LLC v. Krause*, 639 F. Supp. 2d 512, 521 (E.D. Pa. 2009).  Plaintiffs assert a false advertising claim under Subsection (B).

Saxe Eppley argues that the claim should be dismissed because the alleged statement regarding Terri Levine—that she was physically not able to take care of customers—did not constitute "commercial advertising or promotion," and therefore does not fall within the purview of the Lanham Act.

The statute does not define "commercial advertising or promotion."  Courts in this Circuit, however, have adopted the four-part test set forth in *Gordon & Breach Science Pubs S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994), to determine whether representations constitute "commercial advertising or promotion" under the act.  *See, e.g*., *TriState HVAC Equip., LLP v. Big Belly Solar, Inc*., 836 F. Supp. 2d 274, 286 (E.D. Pa. 2011); *Incarcerated Entm't, LLC v. CNBC LLC*, 331 F. Supp. 3d 352, 358-59 (D. Del. 2018).

Under the *Gordon & Breach* test, the statement is "commercial advertising or promotion" if it is:  "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; and (4) disseminated sufficiently to the relevant purchasing public, although representations less formal than those made as part of a classic advertising campaign may suffice."  *Big Belly Solar*, 836 F. Supp. 3d at 286 (citation and internal quotation marks omitted).

Here, the alleged false representation was commercial in nature.  "Commercial speech is generally defined as expression related to the economic interests of the speaker and its audience, generally in the form of a commercial advertisement for the sale of goods and services."  *Keel v. Axelrod*, 148 F. Supp. 3d 411, 420 (E.D. Pa. 2015) (citation and internal quotation marks omitted).  The Amended Complaint alleges that Defendants are luring customers to the services

14

of Smart ENCOREpreneur by falsely stating that Levine—the head of Heartrpreneur and sole

owner of CCU—is physically unable to service customers because of an illness.  This is an

expression related to the economic interests of both Plaintiffs and of Smart ENCOREpreneur.  In

addition, the Defendants competed with Plaintiffs in the business consulting industry.  The false

statement about Levine's health was made for the purpose of influencing customers to work with

Smart ENCOREpreneur.  Finally, as to the last factor, sufficient dissemination to the relevant

purchasing public, the Amended Complaint alleges that the false statement was shared with

multiple Heartrepreneur customers.  This is sufficient.  Plaintiffs have plausibly alleged that

Defendants' statements proposed a commercial transaction as opposed to some other type of

speech.  The motion to dismiss this claim will be denied.[4]

### E.        Breach of Contract (Count 3)

Plaintiffs also bring a claim under Pennsylvania law for breach of contract against

Defendants.  We have dismissed all Defendants except Saxe Eppley and will therefore focus the

analysis on her, even though the Amended Complaint makes no specific allegations as to Saxe

Eppley.  To state a claim for breach of contract, a plaintiff must allege:  "(1) the existence of a

contract, including its essential terms, (2) a breach of duty imposed by the contract[,] and (3)

resultant damages.'"  *ATG Trust Co. v. Schlichtmann*, 314 F. Supp. 3d 718, 725 (E.D. Pa. 2018)

---

[4] The motion to dismiss will also be denied as to Plaintiff's unfair competition claim
under Pennsylvania law.  Pennsylvania's common law regarding unfair competition tracks
claims for trademark infringement and unfair competition under Section 43(a) of the Lanham
Act, but has no specific elements of its own.  *Gideons Int'l, Inc. v. Gideon 300 Ministries, Inc.*,
94 F. Supp. 2d 566, 580-81 (E.D. Pa. 1999) ("A claim for unfair competition under Pennsylvania
common law is identical to a claim under the Lanham Act, except that it does not have an
interstate commerce requirement.").

(quoting *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 486 (E.D. Pa. 2016)); *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 896 (Pa. Super. Ct. 2011).

Plaintiffs state that the contract between Saxe Eppley and Heartrepreneur is valid and that Saxe Eppley has breached the contract by: failing to return Heartrepreneur's confidential information when she left; using Heartrepreneur's confidential information, including its customer lists, to compete directly with Heartrepreneur for its customers; soliciting Heartrepreneur's customers in violation of a non-solicitation clause; and using confidential information for pecuniary gain. Saxe Eppley argues that the contract is invalid because it was signed by Terri Levine, rather than Heartrepreneur's sole owner, Mark Levine, and Plaintiffs have not alleged that Terri Levine was an authorized signor. In addition, Saxe Eppley argues that there is no evidence that Plaintiffs actually maintained the confidentiality of the information at issue, such that the court is not required to enforce the contracts' confidentiality provisions.

As to the first element, the existence of a valid and enforceable contract, Plaintiffs have not alleged any contractual relationship between CCU and Saxe Eppley. Therefore, Plaintiffs' breach of contract claim is dismissed as to CCU.

However, Heartrepreneur's agreement with Saxe Eppley is valid and enforceable. Although Terri Levine may not be the sole owner of Heartrepreneur, she is expressly the "head and proprietor" of the company. When a limited liability company is manager-managed, rather than owner-managed, the manager is presumed to have the authority to bind the company in the normal course of business. 15 Pa. Cons. Stat. § 8831(b). Here, Plaintiffs have expressly stated that the contracts are valid, and that Terri Levine is the "head and proprietor" of Heartrepreneur. Although the terminology of the Amended Complaint differs from the statute, we can infer that the company is manager-managed and that Terri Levine is a manager whose actions in the

16

normal course are binding on the company.  At this stage, Plaintiffs have sufficiently alleged the validity of the agreement.

As to the enforceability of the confidentiality provisions contained in the agreement, Defendants rely on *Hess v. Gebhard & Co.*, 808 A.2d 912 (Pa. 2002), and *Carl A. Colteryahn Dairy, Inc. v. Schneider Dairy*, 203 A.2d 469 (Pa. 1964), for the proposition that the subject contract provisions are unenforceable because Plaintiffs have not stated how they acted to keep the relevant information confidential.  In *Hess* and *Carl A. Colteryahn Dairy*, the Pennsylvania Supreme Court refused to enforce confidentiality covenants between defendant employees and their former employers, an insurance carrier and a milk delivery business, because the information could be obtained by legitimate means by their competitors.  *Hess*, 808 A.2d at 924 (adding that "the identities of potential clients were widely known and easily available."); *Carl A. Colteryahn Dairy*, 203 A.2d at 473 (stating that competitor could ascertain majority of customers on plaintiff's route because "[a] normal driver would know which dairies were delivering to the other people on the streets he was serving" and "a delivery truck need only be followed during a period of one or two runs").

In this case, Plaintiffs' contracts explicitly state that the information they define as confidential is in fact confidential.  None of the facts in the Amended Complaint lead us to conclude that Plaintiffs' confidential information would be easily obtained by competitors.  Defendants contend that, because Exhibit F in the Amended Complaint is a Facebook conversation, the customer who responded to that post must be publicly known.  However, Facebook conversations can be either public or private, and there is no way to determine that at this stage.  As stated above, when assessing a motion to dismiss, we must accept Plaintiffs'

17

allegations as true and assess only whether Saxe Eppley has been put on notice as to each claim. With regard to this element, Plaintiffs have satisfied that burden.

The second element in a breach of contract claim is that the defendants have breached a duty imposed by the contract. The agreement contains a prohibition on use of confidential information for pecuniary gain. The Amended Complaint alleges that Saxe Eppley used Plaintiffs' confidential information, including customer lists and methodologies, to promote ENCOREpreneur. We can infer from the allegations that Saxe Eppley used Heartrepreneur's confidential information for pecuniary gain, in breach of the agreement. Therefore, Heartrepreneur has satisfied this element.

Finally, Heartrepreneur alleges that it has suffered damages, including loss of reputation, goodwill, and competitive edge. At this stage, these allegations are plausible.[5]

### F.      Defamation (Count 4)

Plaintiffs allege that Defendants defamed them by making knowingly false statements to Plaintiffs' customers that Terri Levine, the "head and proprietor" of Heartrepreneur, was physically unable to help clients because of an illness. We have dismissed all Defendants except Saxe Eppley and will therefore focus the analysis on her, even though the Amended Complaint makes no specific allegations as to Saxe Eppley.

To state a claim for defamation, Pennsylvania law requires that a plaintiff allege:

(1) The defamatory character of the communication.
(2) Its publication by the defendant.

---

[5] As a remedy for this claim, Heartrepreneur requests damages, costs, interest, treble and/or punitive damages, and injunctive relief. However, it is well settled that treble damages and punitive damages are unavailable as a remedy for contract claims. *See DiGregorio v. Keystone Health Plan E.*, 840 A.2d 361, 370 (Pa. Super. Ct. 2003). Defendants request that the claims for treble and punitive damages be stricken. We agree and will strike such request from the Amended Complaint.

(3) Its application to the plaintiff.
(4) The understanding by the recipient of its defamatory meaning.
(5) The understanding by the recipient of it as intended to be applied to the plaintiff.
(6) Special harm resulting to the plaintiff from its publication.
(7) Abuse of a conditionally privileged occasion.[6]

42 Pa. Cons. Stat. § 8343; *Mallory v. S&S Pubs.*, 168 F. Supp. 3d 760, 767 (E.D. Pa. 2016)

(citing *Joseph v. Scranton Times, L.P.*, 129 A.3d 404, 424 (Pa. 2015)).

Plaintiffs allege in the Amended Complaint that the statements were false and

defamatory, were understood as false and defamatory by the recipients, referred to Plaintiffs,

were understood by recipients to apply to Plaintiffs, and caused Plaintiffs' professional

reputation harm.  Saxe Eppley argues that Plaintiffs' allegations are woefully deficient in that

they provide no context for the defamatory nature of the comment.  For example, Plaintiffs fail to

allege who made the comment, to whom it was made, and when and where it was made.  She

further contends that the statements are about Terri Levine rather than Plaintiffs and therefore

cannot apply to Plaintiffs; and that Plaintiffs do not allege any supporting facts for their

allegations that the statements were understood by the recipients to be defamatory towards the

Plaintiffs.  As set forth below, Plaintiffs have alleged facts to plausibly state a defamation claim

against Saxe Eppley at this juncture.

Regarding the first element, a statement is defamatory if it tends to injure the business of

the victim.  *See Joseph v. Scranton Times L.P.*, 129 A.3d 404, 430 (Pa. 2015) ("A publication is

defamatory if it tends to [malign] a person's reputation or expose him to public hatred, contempt,

or ridicule, or injure him in his business or profession." (citation omitted)).  Here, Plaintiffs

allege the statement about Terri Levine disparaged her ability help her clients.  Therefore, the

---

[6] Neither party argues this element.

19

statements tend to injure Plaintiffs' businesses, since Terri Levine is either the sole owner (as to CCU) or head and proprietor (as to Heartrepreneur).  The argument that statements about Terri Levine are not statements about Plaintiffs is unpersuasive.  A reasonable person would likely understand that, where services are provided by people, statements regarding the head or sole owner of that service business and their ability to help their clients are statements about the service business itself.  *See, e.g., Tricome v. Welch*, 17 Pa. D. & C.5th 83, 89 (Ct. Common Pl. Montgomery Cty. 2010) (affirming court's dismissal of defamation claim where alleged statement "nowhere identif[ied] plaintiff either expressly or by reasonable implication").

The second element, requiring that the statement be published, is satisfied when Plaintiffs allege details regarding the publishing that are sufficient to put Defendants on notice as to the basis of the claim.  "[I]n Pennsylvania, the communication must be expressed to a third party in order to be 'published.'"  *Davis v. Res. for Human Dev.*, 770 A.2d 353, 358 (Pa. Super. Ct. 2001).  At this stage, Plaintiffs are not required to provide details regarding how, when, or specifically to whom the statement was published.  *See Rishell v. RR Donnelley & Sons Co*., No. 06-4782, 2007 WL 1545622, at *3 (E.D. Pa. May 24, 2007) (holding that, in federal procedure, "a defamation plaintiff does not have to plead the precise defamatory statements, nor must she specifically name the person who made the statements." (citation omitted)).  Plaintiffs allege that Defendants "told" Plaintiffs' clients that Terri Levine was too ill to help them.  Plaintiffs here have alleged the content of the statements, the manner in which the Defendants published the statements, and generally to whom the statements were published, which sufficiently puts Defendants on notice of the claim.

The third element, requiring that the statement be in regard to the plaintiff, and the fifth element, requiring that the recipients be aware of the statement's application to the plaintiff, are

satisfied here.  Plaintiffs allege that the statement directly referenced Terri Levine's ability to help her clients.  As Terri Levine is the sole owner of CCU and head of Heartrepreneur, the statements were clearly in reference to Plaintiffs and were so unambiguous in that regard that we can infer that the recipients understood them as such.  Relatedly, the fourth element, requiring the recipients of the statement to have understood the defendant's statement as defamatory, is satisfied because the statement is an unambiguously defamatory reference to Plaintiffs' businesses.

Regarding the final element, requiring special damages, Plaintiffs allege that they have been damaged *per se*.  "[D]efamation *per se* occurs when the statement ascribes to the plaintiff . . . conduct or characteristics that adversely affect the plaintiff's fitness to properly conduct his profession, trade or business."  *Krolczyk v. Goddard Sys.*, 164 A.3d 521, 531 (Pa. Super. Ct. 2017) (citing Restatement (Second) of Torts § 570).  "With words that are actionable *per se*, only general damages, i.e., proof that one's reputation was actually affected by defamation or that one suffered personal humiliation, or both, must be proven; special damages, i.e., out-of-pocket expenses borne by the plaintiff due to the defamation, need not be proven."  *Scranton Times L.P.*, 959 A.2d at 344.  In this case, Plaintiffs alleged that Defendants' statements have harmed their professional reputation.  In addition, damage to Plaintiffs' professional reputations is plausible given the Defendants' unambiguous statements about Terri Levine's health and Terri Levine's close relationship to both Plaintiffs.  Therefore, the statements have ascribed to Plaintiffs, conduct or characteristics that adversely affect Plaintiffs' fitness to properly conduct their businesses.  The final element of a defamation claim has been sufficiently alleged.

Plaintiffs have alleged facts sufficient to state a claim for defamation.  Defendants' Motions to Dismiss as to this claim will be denied.

21

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss will be granted in part and denied in part.  An appropriate order follows.

**BY THE COURT:**

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**